OPINION OF THE COURT

Per Curiam.

This case arose out of the collapse of a portion of the Broadway Central Hotel building in lower Manhattan on August 3, 1973. Four persons were killed, many others were injured, and a number of businesses suffered extensive property damage.
Forty-three actions to recover for wrongful death, personal injury, and property damage were consolidated. After a nonjury trial, Supreme Court held that the owners of the building were 25% liable, the net lessee was 45% liable, and the City of New York was 30% liable. The city was *237 held to be entitled to indemnification by the owners, and its liability for property damage limited to the value of the property that could have been removed from the building had the city taken prompt action. The court found the city liable because of its department of buildings’ failure to ensure that the building’s dangerous condition was remedied before it collapsed. The Appellate Division modified by granting the city judgment on its indemnification cross claim against the net lessee.
The city should not have been held liable. As this court recently reaffirmed, “it has long been the rule in this State that, in the absence of some special relationship creating a duty to exercise care for the benefi t of particular individuals, liability may not be imposed on a municipality for failure to enforce a statute or regulation” (O’Connor v City of New York, 58 NY2d 184, 192). Here the city building department failed to enforce provisions of the city’s Administrative Code relating to building safety, even though its employees knew of the dangerous structural conditions in the building. These regulations were designed to protect the general public, however, and no special relationship has been shown that would establish a municipal duty to the instant plaintiffs in particular. Thus, the complaints should be dismissed as against the City of New York, and apportionment of liability among the remaining defendants redetermined accordingly.
Appellants Latham and Edwards, the building’s owners, assert that it was also error to impose liability against them. They argue that violation of section 78 of the Multiple Dwelling Law, which requires an owner of a multiple dwelling to keep its building in good repair, cannot form the basis for liability to commercial tenants in the building. It is not disputed that the building, which contained residential units, was a multiple dwelling.* Section 78 *238 places on the owner the duty to see that “[ejvery multiple dwelling, including its roof or roofs, and every part thereof and the lot upon which it is situated, shall be kept in good repair.” The defect in this case involved a structural problem — an ever-widening crack in a major weight-bearing wall — that was central to the entire building. Likewise, the resulting collapse obviously affected the structure as a whole. The dangerous condition had a direct and unquestionable “relation to the maintenance of the building as a tenantable habitation” (Altz v Leiberson, 233 NY 16, 18). In such a case, the owner’s duty to repair the defect is not affected by the use for commercial purposes of portions of the structurally unsafe building (see Sticker v Seril Realty Corp., 256 NY 687).
Although an owner will not be held liable under section 78 where it has completely parted with possession and control of the building, the owners here reserved the right under the terms of the net lease to enter for inspection and repairs. This reservation constituted a sufficient retention of control to subject the owners to liability (see Tkach v Montefiore Hosp. for Chronic Diseases, 289 NY 387, 390; Weiner v Leroco Realty Corp., 279 NY 127, 130; Appel v Muller, 262 NY 278, 283-284). In addition, there was an affirmed finding below that the owners had both constructive notice of the long-standing defect and, through their agent, the husband of one of the owners, actual notice of the dangerous condition. There was, therefore, a sufficient basis for the trial court’s finding of liability against the owners.
Accordingly, the order of the Appellate Division should be modified, with costs to the City of New York against plaintiffs, and the case remitted to Supreme Court, New York County, for further proceedings in accordance with this opinion and, as so modified, affirmed, with costs to plaintiffs against appellants Latham and Edwards. The question certified is answered in the negative.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur in Per Curiam opinion.
Order modified, etc.

 Subdivision 4 of section 4 of the Multiple Dwelling Law defines a “dwelling” as “any building or structure or portion thereof which is occupied in whole or in part as the home, residence or sleeping place of one or more human beings.” Subdivision 7 of section 4 defines a “multiple dwelling”, in relevant part, as follows: “a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other * * * A ‘multiple dwelling’ shall not be deemed to include a hospital, convent, monastery, asylum or public institution, or a fireproof building used wholly for commercial purposes except for not more than one janitor’s apartment and not more than one penthouse occupied by not more than two families” (emphasis supplied).