**Noreene L. DUFFY and James F. Duffy, Plaintiffs,**

v.

**UNITED STATES of America, Irwin Berliner and Dean P. Vlassis, Defendants.**

**No. 98 Civ. 4812 WCC.**

United States District Court, S.D. New York.

May 19, 1999.

Martin P. Rutberg & Associates, Poughkeepsie, New York, for plaintiffs, Martin P. Rutberg, of counsel.

Mary Jo White, United States Attorney for the Southern District of New York, New York City, for defendant United States of America, David S. Jones, Asst. United States Attorney, of counsel.

Cook, Tucker, Netter & Cloonan, P.C., Kingston, New York, for defendants, Irwin Berliner and Dean P. Vlassis, Eric M. Kurtz, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This is an action brought by plaintiffs, Noreene L. Duffy ("Mrs.Duffy") and her husband, James F. Duffy ("Mr.Duffy"), stemming from Mrs. Duffy's trip-and-fall at a United States post office. Plaintiffs sue defendants Irwin Berliner and Dean P. Vlassis ("the landlords"), the owners and lessors of the property, as well as the United States, the lessee of the property. Plaintiffs allege that a defect in the sidewalk caused Mrs. Duffy to trip and frac-

ture her left elbow. They claim that these injuries were caused by the negligence of defendants. Mr. Duffy seeks damages for loss of his wife's "aid, society, and services."

The Court conducted a two-day bench trial that concluded on May 4, 1999. This opinion incorporates the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). For the reasons stated below, we enter judgment in favor of plaintiffs as against the United States, but find for defendants Irwin Berliner and Dean P. Vlassis.

### BACKGROUND

The essential facts in this case are largely undisputed. On February 6, 1998, Mrs. Duffy tripped on a vertical offset between two adjacent slabs of poured concrete on the sidewalk outside the Lagrangeville, New York Post Office. As later measured by plaintiffs' expert, this vertical offset extended across the entire five-foot width of the sidewalk, with a maximum height of one and five-eighths inches at the high side, sloping down to zero differential at the other side. *See* Testimony of Harlan Fair. Defendants claim that the maximum height differential measured only one and one-quarter inches, but we believe that the difference between plaintiffs' and defendants' measurements is of no significance in our determination of the issue of negligence.

### DISCUSSION

I. *Choice of Law*

■ It is clear, and the parties do not dispute, that New York law governs the substantive legal issues in this case. In regard to the United States, the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2871–80, dictates that liability for an accident based on the alleged negligence of an employee of the United States is governed by the laws of the state where the accident occurred—in this case, New York. *See* 28 U.S.C. § 1346(b); *Richards v. United*

*States,* 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Grant v. United States,* 271 F.2d 651, 654–55 (2d Cir.1959); *Ducrepin v. United States,* 964 F.Supp. 659, 663 (E.D.N.Y.1997). As for the private landlords, this is a conduct-regulating negligence action, and the law of the place of the tort ordinarily dictates the choice of law. *Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir.1999). There are no circumstances in the present case to cause us to deviate from this customary rule.

## II. *Liability of the Landlords*

■ We find that the landlords are not liable since they had no contractual obligation to repair the sidewalk in question. "It is well settled that an out-of-possession owner or lessor is not liable for injuries that occur on the premises unless the owner or lessor has retained control over the premises or is contractually obligated to repair or maintain the premises." *Stark v. Port Authority of New York and New Jersey,* 224 A.D.2d 681, 682, 639 N.Y.S.2d 57, 58 (1996) (quoting *Dalzell v. McDonald's Corp.,* 220 A.D.2d 638, 639, 632 N.Y.S.2d 635, 636 (1995)); *see also Putnam v. Stout,* 38 N.Y.2d 607, 345 N.E.2d 319, 381 N.Y.S.2d 848 (1976); *Hecht v. Vanderbilt Assoc.,* 141 A.D.2d 696, 529 N.Y.S.2d 818 (1988). Plaintiffs, as well as the United States, argue that the landlords were obligated to repair the sidewalk, and thus are liable for Mrs. Duffy's accident. Since the lease specifically deleted all provisions requiring the landlords to keep the premises in generally good repair, United States' Ex. F, plaintiffs and the United States rely exclusively on a maintenance rider attached to the lease in their effort to hold the landlords liable. *Id.* However, it is clear that this rider obligates the landlords to repair only certain structures, not including the sidewalk in question. The rider states in relevant part:

The lessor shall be responsible for:

(1) repairs to all common or joint use areas that may be included as part of this lease agreement;

(2) all structural repairs to the demised premises. Structural repairs as used in this subsection shall be limited to the foundation, bearing walls, floors (not including floor covering), column supports and all parts of the roof system (including, but not limited to, roof covering, flashing and insulation);

(3) repairs resulting from Acts of God or of a public enemy;

(4) repairs resulting from defects in building construction or installation of equipment, fixtures or appurtenances furnished by the lessor ...

Based upon the plain language of these provisions, as well as evidence produced at trial as to their meaning, we hold that the landlords had no responsibility to repair the sidewalk, and thus cannot be liable for an accident caused by a defect in it.[1] As to subparagraph (1), it is clear that this language is meant to apply to a leased premises containing two or more separate establishments or dwellings, containing "common or joint use areas." *See, e.g., Loeser v. Nathan Hale Gardens, Inc.,* 73 A.D.2d 187, 425 N.Y.S.2d 104 (1980); 74 New York Jurisprudence 2d, Landlord and Tenant § 169 (1988). Since the lease concerned only the post office, and there are no other businesses or dwellings on the site, this subparagraph cannot apply to the sidewalk in question.

As to subparagraph (2), neither plaintiffs nor the United States presented evidence on which we could base a finding that the misalignment was "a structural problem." The only evidence is to the contrary. The provision itself specifically limits the definition of the term "structural," to include only the "foundation," "bearing walls," "floors," "column support," and "roof system." The only one of

---

1. Ambiguity in a lease "may be resolved by a consideration of such surrounding circumstances as was presumably considered by the parties at the time of the execution of the lease." 74 New York Jurisprudence 2d, Landlord and Tenant § 168 (1988).

these terms which could even arguably apply to the sidewalk is "floors." But the word "floors" rather clearly refers to interior supporting surfaces which are part of the building structure. The New York courts have specifically held that sidewalk defects do not constitute "structural" damage. *Ribacoff v. City of Mount Vernon*, 251 A.D.2d 482, 482, 674 N.Y.S.2d 431, 432–33 (1998) (because defendant "was responsible for making structural repairs [only], ... [t]he Supreme Court properly granted [defendant's] motion for summary judgment, since [defendant] was not obligated under the lease to repair the sidewalk...."); *Morel v. City of New York*, 192 A.D.2d 428, 429, 597 N.Y.S.2d 8, 9 (1993) (plaintiff tripped and fell on a sidewalk, and court ruled that "it is clear that the required work was non-structural").

The final two subparagraphs require little discussion. We reject the proposition that the misalignment between the two slabs of concrete was caused by an "act of God" or by a "public enemy," and neither plaintiffs nor the United States offered any evidence at trial to support that theory. We hold that a subsidence in soil causing an approximately one inch misalignment between two concrete slabs does not constitute an act of God. The expression "act of God" is normally construed to refer to such natural phenomenon as earthquakes, floods, lightning, and other "force[s] of nature." W. Prosser, Law of Torts § 79, p. 521 (4th ed.1971). As for subparagraph (4), it is obvious that the accident was not caused by "installation of equipment, fixtures, or appurtenances." Thus, because the landlords had no duty to repair the sidewalk, they are not liable for any accident caused by a defect in it.

■ Although there are other circumstances in which the landlords could be held liable, even though they had no specific duty to repair the sidewalk, none are present in this case. First, an express provision in the lease to indemnify the tenant against tort liability would make the landlords liable for this kind of accident; however no such provision appears in the lease here. *See, e.g., Meek v. Oil, Chemical, & Atomic Workers Int'l Union*, 862 F.Supp. 982, 986–87 (W.D.N.Y.1994) (tenant indemnifies landlord); *Fay's Drug Co. v. British Am. Dev. Corp.*, 140 A.D.2d 810, 811, 528 N.Y.S.2d 201, 202 (1988) (landlord indemnifies tenant). Second, liability ensues for a landlord who is involved in such daily operations on the premises that he maintains sufficient control over the premises to provide a basis for the imposition of liability. *See Ahmad v. Getty Petroleum Corp.*, 217 A.D.2d 600, 629 N.Y.S.2d 779 (1995). This clearly does not apply to these landlords; the lease allows for no such generalized control by the landlords, and it was obvious at trial that these private building owners have no ability to assist in the "daily operations" of a United States post office. In fact, the uncontested testimony at trial showed that neither landlord has ever seen the premises.

■ Lastly, courts have found landlords liable when: (1) they retain a general right to enter a leased premises to make repairs (as opposed to having a specific obligation to repair the defective feature in question) and (2) the defect constitutes a violation of a statute. *Worth Distributors, Inc. v. Latham*, 59 N.Y.2d 231, 451 N.E.2d 193, 464 N.Y.S.2d 435 (1983); *Stark*, 224 A.D.2d 681, 639 N.Y.S.2d 57. As explained above, the parties to the lease specifically deleted those portions that would place a general obligation on the landlords to make repairs. The landlords were responsible for only the types of repairs specified in the maintenance rider, and only upon written notification by the lessee of the need therefor. Such an agreement hardly constitutes "a sufficient retention of control to subject the owners to liability." *Worth*, 59 N.Y.2d at 238, 464 N.Y.S.2d 435, 451 N.E.2d 193.[2]

---

2. Further, it was not clear from trial whether this defect in the sidewalk actually constituted

### III. *Liability of the United States*

 Negligence is conduct that falls below the standard of what a reasonably prudent person would do under similar circumstances. *Holland v. United States,* 918 F.Supp. 87, 89 (S.D.N.Y.1996); *People v. Grogan,* 260 N.Y. 138, 146, 183 N.E. 273, 276 (1932). After consideration of all the relevant evidence presented at trial, we find the United States was negligent. The parties do not dispute that this vertical offset extended approximately five feet across the sidewalk, with a maximum height of between one and one-quarter inches and one and five-eighths inches at the high side, sloping down to zero differential at the other side. The parties also do not dispute that persons who used the parking lot would normally enter the building by walking on this sidewalk past the defect. The parties additionally agree that the defect is located immediately before a sharp, ninety-degree turn around the front corner of the building. It would be normal for a person approaching the corner to direct her attention forward, instead of downward, so as to avoid collision with anyone coming in the opposite direction toward this corner, and thus would not readily observe the defect. In these circumstances, a vertical offset of even one inch or less is a substantial tripping hazard. There is every reason to believe that the defect was not caused by a sudden incident, but by the gradual compaction of the soil. Moreover, called a non-party witness to the accident who testified that she had observed the defective condition in the sidewalk many months before the accident occurred. *See* Testimony of Patricia Ebersole. For these reasons, we find that the United States was negligent in failing to discover and correct the vertical misalignment occurring in the post office sidewalk. Put simply, it was unreasonable to allow a significant vertical offset to remain on a main thoroughfare over which many users of the post office customarily traveled.

### IV. *Comparative Negligence*

 Under New York law regarding comparative liability, plaintiffs' damages "otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages." NY CPLR § 1411. We hold that Mrs. Duffy is, in part, responsible for this accident, since she should have observed the height differential, which was in plain view as she walked down the sidewalk toward the area where she fell.

Mrs. Duffy "owed a duty to [herself] to recognize obvious hazards and exercise the appropriate level of caution." *Catherman v. United States,* 1992 WL 175258, \*14 (N.D.N.Y. July 21, 1992); *see also Rolfe v. Galt,* 102 A.D.2d 983, 477 N.Y.S.2d 790 (1984); *Olsen v. State of New York,* 30 A.D.2d 759, 291 N.Y.S.2d 833 (1968), *aff'd,* 25 N.Y.2d 665, 254 N.E.2d 774, 306 N.Y.S.2d 474 (1969). Mrs. Duffy had the duty to use reasonable care to observe her surroundings and was " 'bound to see what by the proper use of her senses she might have seen.' " *Lolik v. Big v. Supermarkets,* 210 A.D.2d 703, 704, 620 N.Y.S.2d 167, 169 (1994), *rev'd on other grounds,* 86 N.Y.2d 744, 655 N.E.2d 163, 631 N.Y.S.2d 122 (1995) (quoting *Weigand v. United Traction Co.,* 221 N.Y. 39, 42, 116 N.E. 345, 345 (1917)). We therefore find that the accident was due one-third to the negligence of Mrs. Duffy and two-thirds to the negligence of the United States.

### V. *Damages*

#### A. *Mrs. Duffy*

We find, and the parties do not dispute, that as a result of this accident, Mrs. Duffy

---

a specific violation of a statute. *See* Testimony of Plaintiffs' Engineering Expert Harlan

Fair.

suffered a compound, comminuted fracture of the distal portion of the humerus on her dominant left arm. Consequently, she was required to undergo surgery to insert a total of nine stainless screws into her elbow. After spending three days in the hospital, she was placed in a brace that rendered her arm essentially immobile for eight weeks, causing atrophy of her shoulder and arm muscles and loss of mobility of her joints. After this eight-week period, she was required to wear another less restrictive brace, and required to participate in physical therapy over many months. On March 8, 1999, Mrs. Duffy was forced to submit to another surgery to, inter alia, remove the screws that were inserted at the time of the first surgery. As expected, this second surgery caused further discomfort, and temporarily restricted her flexion to an even greater extent than before the second surgery. As is common with these kinds of injuries, Mrs. Duffy has also experienced significant discomfort in her shoulder. In the immediate future, Mrs. Duffy will be required to engage in further physical therapy; there is also at least some possibility that a third surgery will be required.

As a result of this accident, Mrs. Duffy experienced, and continues to experience, substantial pain in her elbow and shoulder. Moreover, her flexion in her left arm has been significantly limited; for example, Mrs. Duffy cannot touch the top of her head with her left hand. Because of these limitations, Mrs. Duffy testified that many of her activities of daily living, such as personal hygiene, housekeeping, and cooking, as well as hobbies, such as gardening, swimming, and bike riding, have been substantially impaired. Moreover, as a result of these injuries, Mrs. Duffy, who works seasonally for a tax accounting firm, claims lost income of approximately $5700, and seeks recovery on a stipulated lien for medical expenses totaling $6617.37.

However, we also find, and the parties do not dispute, that Mrs. Duffy should expect significant improvement in her condition. Mrs. Duffy's second surgery was performed only two months ago, and even her own medical expert testified that "she's very early in the rehabilitation." *See* Taped Video Deposition Testimony of David DiMarco, M.D. We are also persuaded by defendants' medical expert, O. Alton Barron, M.D., who testified that while Mrs. Duffy's flexion will never return to what it was before the accident, it is likely that within the next six months, Mrs. Duffy's condition will significantly improve. In fact, her improvement is expected to be so substantial that she will be able to engage, without significant pain, in all of the activities in which her participation is currently restricted: daily hygiene, housekeeping, cooking, gardening, swimming, and bike riding should all be possible without great difficulty. *See* Testimony of Dr. Barron. While we do not discount the significant pain and hardship Mrs. Duffy has incurred as a result of this accident, we also find that her life will return essentially to normal within about two years of the date of the accident. We therefore find that Mrs. Duffy is entitled to $125,000 in damages as against the United States for lost wages, medical expenses, and pain and suffering, which shall be reduced by one-third because her own negligence contributed to the occurrence of this accident.

### B. *Mr. Duffy*

■ Mr. Duffy claims, and the parties do not dispute, that, as a result of his wife's accident, he has experienced substantial hardship. The couple could not have sexual relations for six months following the accident. Mr. Duffy was also forced to act as a care giver for his wife; he essentially served as her chauffeur for over four months after the accident, and must still help her with various aspects of performing her daily hygiene, such as placing a shower cap upon her head. *See* Testimony of Mr. Duffy. Mr. Duffy has also been compelled to take on various chores previously performed by Mrs. Duffy, such as vacuuming, cooking, and lifting

of heavy objects. *Id.* We, again recognize, however, and Mr. Duffy himself so testified, that Mrs. Duffy's dependence on her husband has significantly improved as time has passed since the accident. We also credit Dr. Barron's testimony, which leads us to believe that Mrs. Duffy should essentially have no dependance on her husband as a result of this accident within approximately two years of the date of the fall. We therefore hold that Mr. Duffy is entitled to $25,000 in damages as against the United States, reduced by one-third because Mrs. Duffy's own negligence contributed to the accident.[3]

### CONCLUSION

Thus, Mrs. Duffy is entitled to $83,333.33 in damages as against the United States, and Mr. Duffy is entitled to $16,666.67 in damages as against the United States. The complaint against Irwin Berliner and Dean P. Vlassis is dismissed in its entirety. The parties will bear their own costs and attorneys' fees. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

---

3. That Mr. Duffy is properly chargeable with his wife's negligence is not questioned by him and is in accord with the weight of authority. *See, e.g., Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1434 n. 14 (5th Cir.1988); W. Prosser & P. Keeton, Prosser & Keeton on The Law of Torts § 125 at 937 ("[T]he courts generally have considered that the recovery of the spouse ... will be defeated or diminished by defenses which would bar or diminish that of the injured spouse.... Thus contributory negligence ... on the part of the injured person has been held to defeat recovery, or, in comparative negligence states, to reduce it." (footnotes omitted)); F. Harper, F. James, O. Gray, 3 The Law of Torts § 8.9 at 555 n. 17 (2d ed. 1986) ("[W]here the doctrine of comparative negligence obtains, most courts have similarly reduced the award for loss of consortium by the percentage of negligence attributed to the physically injured spouse").