[743 NYS2d 105]

Israel Bonifacio, Respondent, v 910-930 Southern Boulevard LLC, Appellant.

First Department, June 13, 2002

APPEARANCES OF COUNSEL

*H. Gary Zaslav* of counsel, New York City (*Allen H. Weiss* on the brief; *Zaslav & Auerbach, P.C.,* attorneys), for respondent.

*John DeMatteo, III,* of counsel (*Marshall, Conway & Wright, P.C.,* attorneys), for appellant.

## OPINION OF THE COURT

SAXE, J.

We are asked on this appeal to consider an issue of premises liability not previously considered by the courts of this state: if an owner of premises net leases its property to a tenant, without reserving to itself any right of reentry or inspection and repair, may such owner nevertheless be held responsible in tort, pursuant to its nondelegable duty under Multiple Dwelling Law § 78, for defects at the premises through the imputation of constructive notice, much as if it had retained a right of reentry?

Plaintiff asserts that on May 18, 1997, the elevator he was in at 916 Southern Boulevard, in the Bronx, dropped rapidly from the fourth floor to the first, resulting in an impact that caused him serious physical injuries. At that time, the record fee owner of the property was defendant, 910-930 Southern Boulevard LLC, which had acquired title by a deed dated November 29, 1996, pursuant to a judgment of foreclosure.

In this motion for summary judgment, made on October 19, 2000, defendant owner claimed for the first time that it was an out-of-possession owner with no control over the premises, submitting in support a so-called "triple net lease" dated June 30, 1992, between an entity called 910 Southern Realty Corp. as owner, and Gun Hill Realty Co. as the "agent," by which the agent agreed to assume sole responsibility for the operation of the premises as if it were the owner. In response to plaintiff's challenge to the use of the document, on the ground that it was entered into before defendant purchased the building by an entity whose name is different from defendant's, defendant's representative asserted that despite the foreclosure sale in 1996, and the difference between defendant's name and the name of the owner on the net lease, this lease still represents an agreement between itself as owner and Gun Hill Realty as lessee.

Defendant's position is that despite the dictates of Multiple Dwelling Law § 78, it may not be held liable for the alleged defective condition in the leased building because it is a net

lessor that has *not* reserved any right of reentry, and it had been given *no notice* of the asserted defective condition.

The motion court denied defendant's motion for summary judgment dismissing the complaint, concluding that defendant had failed to establish that it or its agent did not have notice of the asserted defect. For the following reasons, we now affirm.

Section 78 of the Multiple Dwelling Law provides, as it has since its enactment in 1929, that the owner of a multiple dwelling is responsible for keeping the building in good repair. The owner's liability under this statute is nondelegable, although the owner may in turn look to a party with whom it contracted for the maintenance of the premises (*see*, *Rogers v Dorchester Assoc.*, 32 NY2d 553).

The liability of out-of-possession building owners under section 78 for injury caused by a defective condition was first considered by the Court of Appeals in *Weiner v Leroco Realty Corp.* (279 NY 127). The plaintiff there had been injured on the defective front steps of the building. In response to the landlord's defense that it could not be liable because it had leased the entire premises and was therefore out of possession, the Court held, "[w]e take a different view of the owner's responsibility and do not think that he can escape the obligations placed upon him by the Multiple Dwelling Law by making a lease of the entire building" (*id.* at 129). Regardless of the lessee's concurrent legal responsibility, the Court explained, "the owner does not escape liability by making a lease" (*id.* at 130). The Court went on to elaborate on its concern that "[b]y leasing the premises to some irresponsible person, owners could very readily shift the burden and nullify the purposes of the law." (*Id.*) Although it then added that the landlord's contractual right to reenter and make repairs supported its conclusion, the Court did not explicitly require the existence of that right in order to arrive at its conclusion (*id.*).

A few years later, the Court issued its decision in *Tkach v Montefiore Hosp.* (289 NY 387). In *Tkach*, the plaintiff, an apartment tenant, was injured by falling plaster in her apartment, and sued the owner of the building, who in turn impleaded the net lessee; notice of the condition had been given to the net lessee's agent, who did nothing about it. The lease from the owner to the net lessee required the lessee to keep the property in repair, although it gave the landlord a right of reentry and inspection, without obligating the landlord to make repairs. The landlord took the position that it lacked notice of the condition, which, unlike in *Weiner v Leroco* (*supra*), was

inside the building. The Court of Appeals held that where the landlord net leases the whole of the building but reserves a right of reentry in the lease, it remains chargeable with constructive notice of dangerous conditions of which the lessee had notice in all those parts of the building into which the lease authorized its entry (*Tkach, supra*, 289 NY at 389-390). Subsequent cases repeated the rule that the building owner's contractual right of reentry in a lease of the building renders it subject to liability for defective conditions in the building (*see, Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559; *Worth Distribs. v Latham*, 59 NY2d 231, 238).

Suppose, however, that the owner did not reserve a right of reentry in a net lease? Does Multiple Dwelling Law § 78 still apply to the owner? It is this question that the Court in *Tkach* specifically declined to address: "We need not now decide whether liability might also be imposed, on the theory of constructive notice, in a case where the landlord has not reserved the right to enter, inspect and repair, or whether, in this case liability might be imposed on any theory other than the one here applied" (289 NY at 390, *supra*).

More recent decisions, relied upon by defendant, have indeed asserted that "an owner will not be held liable under section 78 where it has completely parted with possession and control of the building" (*Worth Distribs. v Latham*, 59 NY2d 231, 238; *see also, Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 566). However, it should be noted that in *Worth* (*supra*), the Court merely observed, as it had previously, that the reservation of a right of reentry meant the owner had retained a degree of control over the building. It did not say that the absence of a provision retaining the owner's right of reentry established as a matter of law that the owner had completely parted with possession and control.

Those few cases in which an out-of-possession owner has actually been held exempt from liability as a matter of law under Multiple Dwelling Law § 78 have not relied solely upon leases lacking any right of reentry. Rather, they have involved properties where the legal arrangements irrefutably establish that the entity denominated the "owner" had no right or responsibility regarding the operations of the building itself.

For instance, in *Garcia v Dormitory Auth. of State of N.Y.* (195 AD2d 288), defendant Dormitory Authority of the State of New York had provided financing to Columbia University for the construction of dormitory facilities, under an agreement providing that title would be held by the Dormitory Authority

until the loan was repaid. This Court declined to apply to the Dormitory Authority an owner's statutory obligation to maintain its building in good repair, explaining that defendant's position was in the nature of a mortgagee rather than a traditional owner, and "[t]he lease is not a standard leasing agreement, but rather a part of an extensive financing arrangement" (*see*, *id.* at 289).

Similarly, in *Bowles v City of New York* (154 AD2d 324), the Second Department dismissed a personal injury claim against the corporation that held title to the property, explaining that it was a real estate investment corporation that had obtained title to the property essentially as a mortgagee. (*See also, Gomez v Walton Realty Assoc.*, 258 AD2d 307, 308 [pursuant to receivership, owner was divested of possession, barred from managing building].)

None of the relied-upon cases hold, in as broad a manner as defendant suggests, that an owner of a multiple dwelling may rid itself of its obligations under Multiple Dwelling Law § 78 by the simple expedient of voluntarily leasing the building to another with a document that does not contain a right of reentry. Indeed, given the stringent and nondelegable nature of the duty imposed by section 78, it would be inappropriate to permit such a result.

In any event, the mere absence of a right of reentry provision in the net lease does not in itself conclusively establish, in all circumstances, that the owner has "completely parted with" control of the building as that phrase is used in *Worth Distribs. v Latham* (*supra* at 238). Rather, retention of a right of reentry is merely one way an owner may maintain a degree of control.

Particularly in the present circumstances, it is far from apparent that defendant owner, by virtue of the net lease it relies upon, *completely* parted with control of the building. Its true position regarding the operations of the building is called into question by the unexplained connections among the former owner, the current owner, and the agent/lessee. Furthermore, defendant's concealment of the existence of Gun Hill Realty as net lessee and the terms of the net lease, and defendant's avoidance of deposition, until after the statute of limitations had expired for any claim against Gun Hill Realty, also creates some question as to the nature of the relationship between defendant and Gun Hill Realty. At the very least, issues of fact exist here as to whether defendant actually "completely parted with possession and control of the building" (*id.*).

As the Court of Appeals emphasized in both *Weiner v Leroco* and *Tkach*, we should be vigilant in ensuring that an owner is

not simply attempting to "shift the burden and nullify the purposes of [Multiple Dwelling Law § 78]" (*Tkach*, 289 NY, *supra* at 390; *Weiner v Leroco Realty Corp.*, 279 NY 127, 130, *supra*) merely by the expedient of demonstrating the existence of a lease of the entire building.

Nor will we dismiss the action due to plaintiff's inability to present any evidence of notice regarding the alleged defect in the elevator. First of all, an owner's nondelegable duty under Multiple Dwelling Law § 78 to keep its premises in good repair includes elevator maintenance (*see, Camaj v East 52nd Partners*, 215 AD2d 150). As the proponent of the motion for summary judgment, it was incumbent upon defendant to establish entitlement to judgment as a matter of law, which would require the owner of the building to show that the elevator in question was in good repair and that neither defendant nor anyone acting as its agent had any notice, actual or constructive, of any defects or complaints. No such showing was made here.

Furthermore, inasmuch as elevators do not ordinarily fall four floors in the absence of some negligence, and since a fact question exists as to whether the building was within the exclusive control of defendant through an agent, we cannot at this juncture exclude the possibility that an inference of negligence on the part of the owner may be permissible through the application of res ipsa loquitur (*see, Dickman v Stewart Tenants Corp.*, 221 AD2d 158).

In the absence of any information as to the relationship between defendant owner and the net lessee, or as to what notice the lessee had regarding maintenance of, and any problems with, the elevator, dismissal of the complaint against the owner based solely upon the lease terms would have been premature.

Accordingly, the order of the Supreme Court, Bronx County (Kenneth Thompson, Jr., J.), entered on or about May 3, 2001, which, insofar as appealed from, denied defendant's motion for summary judgment dismissing the complaint, should be affirmed, without costs.

Motion seeking leave to amend/correct record granted.

MAZZARELLI, J.P., ROSENBERGER, ELLERIN and MARLOW, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about May 3, 2001, affirmed, without costs. Motion seeking leave to amend/correct the record granted.