**TAUNUS CORP., et al., Plaintiffs,**

v.

**THE CITY OF NEW YORK, Defendant.**

Nos. 02 Civ. 9762(AKH), 03 Civ. 3104(AKH).

United States District Court, S.D. New York.

Aug. 27, 2003.

Philippe A. Zimmerman, Henry J. Bergman, Moses & Singer, New York, New York, for Plaintiffs.

Jesse I Levine, Corp. Counsel City of New York, New York, for Defendant.

### OPINION AND ORDER DISMISSING CASE NO. 02 CIV. 9762 AND CASE NO. 03 CIV. 3104

HELLERSTEIN, District Judge.

These two cases arise out of damage sustained by owners and occupants of properties in the vicinity of the Twin Towers following the September 11, 2001 terrorist attacks. The plaintiffs allege that the City is liable for their injuries based on negligent inspection and storage of diesel

---

**1.** Deutsche Bank states that it owned 130 Liberty Street.

**2.** Deutsche Bank states that it owned 4 Albany Street.

tanks in 7 World Trade Center before the attacks and the City's activities in the disaster area for three months after the attacks. The City has brought motions to dismiss both these cases. I dismiss 02 Civ. 9762 as duplicative of 03 Civ. 3104, and also grant the City's motion as to 03 Civ. 3104 but give plaintiffs leave to replead.

### I. Background

The two cases have been brought by Deutsche Bank Trust Company of America ("Deutsche Bank") (formerly known as Banker's Trust Company) and 134 of its purported corporate affiliates and subsidiaries who owned, occupied, and/or leased buildings located at 130 Liberty Street,[1] 4 Albany Street,[2] and 4 World Trade Center.[3] Both cases make the same claims. Following the terrorist attacks of September 11, 2001, and through December 2001 (the "Response Period"), the City exercised control over the area surrounding the World Trade Center disaster site (called the "Frozen Zone"), including the area where the plaintiffs' properties were located, and prevented them from using, occupying, repairing, protecting, or cleaning their properties. Plaintiffs allege that the City was negligent in inspecting, controlling, and/or occupying space in 1, 2, 4, and 7 World Trade Center ("WTC") and in its activities in the Frozen Zone during the three months following the attacks.

On December 7, 2001, plaintiff Deutsche Bank (at that time, known as Bankers Trust Company), on behalf of itself, "its affiliates, subsidiaries, agents, successors, assigns, independent contractors, and vendors," served a Notice of Claim on the

---

**3.** Deutsche Bank states that it leased over 300,000 square feet in 4 World Trade Center.

City, as required by sections 50–e and 50–i of New York's General Municipal Law. The Notice of Claim stated that the City's negligence in the design, construction, inspection, operation, and management of the Twin Towers preceding September 11 and in the post-attack recovery and reconstruction efforts led to the partial destruction of 130 Liberty, the collapse of 4 WTC, and damage to 4 Albany, and resulted in real and personal property damage, personal injury, and wrongful death therein. The Notice of Claim also stated that the claimant suffered damage to a lesser degree to its property at 14 Wall Street and 60 Wall Street. The initial estimate of losses was no less than $500 million.

The plaintiffs filed two cases on December 10, 2002, one in federal court—No. 02 Civ. 9762—and one in state court by summons with notice. The state court case was removed by the defendant and docketed as No. 03 Civ. 0314. The complaints in both cases are identical except for the jurisdictional allegations contained in paragraphs 137 through 139. Count One of each case claims that defendants were negligent in placing diesel fuel tanks and other environmental contaminants in 7 WTC in violation of applicable laws and standards, in failing to ensure that appropriate measures were taken to protect plaintiff's property, and in its supervision of employees, agents, and contractors in the Frozen Zone during the Response Period. Count Two charges the City with negligence per se, and Counts Three and Four respectively charge the City with private and public nuisance; these counts are stated in conclusory fashion, relying on the same factual allegations underlying Count One.

## II. Discussion

The City argues that 03 Civ. 3104 should be dismissed as repetitive of 02 Civ. 9762. The City further argues that both cases should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6), because they exceed the claims set out in the notice of claim filed with the City, because of the City's immunity from suit for conduct performed in its governmental functions, and on other grounds.

### A. Dismissal of Repetitive Lawsuit

The City seeks the dismissal of the suit filed in state court and then removed to this court, No. 03 Civ. 3104, as duplicative of 02 Civ. 9762. The City argues that because the plaintiffs filed only a summons with notice in the state court, case No. 02 Civ. 9762 must be considered first filed even though the suits were instituted on the same day. The plaintiffs respond that the removed action should remain in the event that federal subject matter jurisdiction is ultimately rejected.

Because these two cases are essentially the same, one should be dismissed. *See Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 664 (S.D.N.Y. 1997), *aff'd*, No. 98–9326, 173 F.3d 844, 1999 U.S.App. LEXIS 8402 (2d Cir. Apr. 16, 1999). Plaintiffs would prefer to dismiss case No. 02 Civ. 9762 and proceed with case No. 03 Civ. 3104, and I agree. Dismissal of No. 02 Civ. 9762 in favor of No. 03 Civ. 3014 may better preserve the right of plaintiffs to proceed in state court should this court or a court of appeals dismiss or remand for lack of subject matter jurisdiction. I need not address the City's technical arguments about which case qualifies as "first filed," for the two cases are at the same stage, subject to Rule 12(b)(6) motions to dismiss decided by this Order. *See 800–Flowers, Inc. v. Intercontinental Florist*, 860 F.Supp. 128, 133 (S.D.N.Y.1994) (noting that "district courts need not slavishly adhere to the first filed rule"). Accordingly, I dismiss case No. 03 Civ. 3014.

## B. 7 World Trade Center Claims

New York General Municipal Law § 50–e provides that, as a condition precedent to filing suit, a notice of claim must be filed against the City within ninety days after the claim accrues. N.Y. Gen. Mun. Law § 50–e(1)(a). The notice must be in writing and sworn to by the claimant and state: (1) the name and address of each claimant and his attorney, if any; (2) the nature of the claim; (3) the time, place, and manner in which the claim arose; and (4) the damages that have been sustained. N.Y. Gen. Mun. Law § 50–e(2). Section 50–e(5) provides that a court may grant leave to serve a late notice of claim, but that such leave cannot be granted after the deadline for filing suit against the public corporation—in this case, one year and ninety days, *see* N.Y. Gen. Mun. Law § 50–i (2003). Section 50–e(6) provides that a "mistake, omission, irregularity or defect made in good faith in the notice of claim required to be served by this section, not pertaining to the manner or time of service thereof, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby."

█ The Notice of Claim filed by plaintiffs on December 7, 2001 focuses on the City's negligence with respect to the Twin Towers, i.e., 1 and 2 World Trade Center, prior to the attacks and with respect to post-attack recovery and reconstruction efforts. The Notice did not include the plaintiffs' claims with respect to the storage of diesel tanks by the defendant in 7 World Trade Center. The City contends that these additional claims must be dismissed, and I so hold.

Plaintiffs rely heavily on the recent decision *Industrial Risk Insurers v. City of New York*, Index No. 112480/02, 2003 WL 1793072 (N.Y.Sup.Ct. Mar.19, 2003). The court there granted leave to a leaseholder to file a late notice of claim based on the placement of diesel fuel tanks in 7 WTC. In *Industrial Risk Insurers*, however, the plaintiff filed a late notice of claim within the period allowed for suit and thus could invoke section 50–e(5). Here, the omission cannot be corrected by filing a late notice of claim under section 50–e(5), because more than one year and ninety days have passed since the time the plaintiffs' claims arose on September 11, 2001 and the statutory bar thus applies.

Nor can the omission be excused under section 50–e(6). Nowhere in the Notice of Claim do the plaintiffs mention 7 World Trade Center or the diesel tanks contained therein. By adding a claim based on 7 World Trade Center in their complaint, the plaintiffs are asserting a new theory of liability—in essence, that the City's negligence in storing diesel tanks at 7 WTC led to its collapse and the resulting contamination and damage to the plaintiffs' properties. This is a new theory of liability that cannot be corrected under section 50–e(6). *See, e.g., Richard v. Town of Oyster Bay*, 300 A.D.2d 561, 752 N.Y.S.2d 537, 537 (N.Y.App.Div.2002) (holding that failure to identify the location and cause of injury is a substantive amendment, inexcusable under section 50–e(6)); *Barksdale v. New York City Transit Auth.*, 294 A.D.2d 210, 741 N.Y.S.2d 697, 698 (N.Y.App.Div.2002) (dismissing defective design claims where notice of claim had alleged that decedent's fall between the subway cars was caused by the lack of or improperly maintained safety chains between subway cars); *White v. New York City Hous. Auth.*, 288 A.D.2d 150, 734 N.Y.S.2d 11, 12 (N.Y.App. Div.2001) (precluding claim of inadequate lighting where plaintiff alleged in her notice of claim that she fell due to a foreign substance on the floor).

Plaintiffs contend that notice of the 7 WTC claims was provided at the hearing required by General Municipal Law § 50–h. At the November 27, 2002 hearing, the plaintiffs' consultant testified about allegations with respect to the placement of diesel tanks. Giving notice of a claim at a statutory hearing, however, cannot overcome the original deficiency where the theory of liability departs from one expressed in the original Notice of Claim. *See, e.g., Prevete v. City of New York,* 272 A.D.2d 333, 707 N.Y.S.2d 192, 193 (N.Y.App.Div. 2000); *Figueroa v. New York City Hous. Auth.,* 271 A.D.2d 238, 707 N.Y.S.2d 37, 38 (N.Y.App.Div.2000). Accordingly, plaintiffs' negligence claims with respect to 7 WTC are dismissed.

### C. City's Liability for Negligence Following the Attacks

Shortly after the terrorist attacks of September 11, Mayor Rudolph Giuliani issued a "Proclamation of a State of Emergency" ("Proclamation"), prohibiting pedestrian and vehicular traffic and occupancy and use of buildings in Manhattan, south of 14th Street. The City continued to maintain exclusive control over the area known as the Frozen Zone to December 2001 while it conducted its recovery and clean-up operations. The City was authorized to take these actions pursuant to section 24 of the New York Executive Law, which allows the chief executive of a state county to "promulgate local emergency orders to protect life and property or to bring the emergency situation under control," and more generally, section 20(13) of the New York General City Law, which empowers cities to "maintain order, enforce the laws, protect property, and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto."

██ The City contends that it is immune for any negligence following the September 11 attacks because it was acting in its governmental function when it closed and restricted access to the Frozen Zone in order to facilitate rescue, recovery, and clean-up activities during the Response Period. A municipality cannot be liable for its negligence in performing a governmental function, unless a "special relationship" between the plaintiff and the municipality is created. *Lauer v. City of New York,* 95 N.Y.2d 95, 711 N.Y.S.2d 112, 733 N.E.2d 184, 189 (2000). A special relationship arises when the following elements exist: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) the party's justifiable reliance on the municipality's affirmative undertaking. *Cuffy v. City of New York,* 69 N.Y.2d 255, 513 N.Y.S.2d 372, 505 N.E.2d 937, 940 (1987). Absent a special relationship, a plaintiff cannot recover against a municipality for failure to protect property from damage, even where the municipality knew of a dangerous condition affecting the property. *Worth Distributors, Inc. v. Latham,* 59 N.Y.2d 231, 464 N.Y.S.2d 435, 451 N.E.2d 193, 194 (1983).

██ The plaintiffs have not alleged any facts to the effect that the City made any promises or representations to them, thereby assuming a special relationship for their benefit. Nor has any particular "direct contact" been alleged. The complaint states merely that the City assumed and exercised control over the Frozen Zone and prevented the plaintiffs from accessing their buildings from September 11, 2001 to December 2001; that the City "established

a special relationship with Plaintiffs"; and that the City was "negligent and failed to act with reasonable care" "in its activities affecting Plaintiffs' Properties in the Frozen Zone during the Response Period," by failing "to ensure that appropriate measures were taken to protect Plaintiffs' property" and negligently supervising its employees, agents, and contractors. (Compl.¶¶ 145–150.)[4] These conclusory allegations of "special relationship" do not suffice when they are coupled with allegations that liken plaintiffs' properties with every other property in the Frozen Zone. Plaintiffs are required to plead the claim of a special relationship by more than a label. Their negligence claims are dismissed with leave to replead.

### D. City's Liability for Negligence in the Inspection and Control of 1, 2, and 4 WTC

█ The City also moves to dismiss all claims of negligence based on pre-September 11, 2001 inspection and control of 1, 2, and 4 World Trade Center on the ground that it did not owe the plaintiffs any duty. Plaintiffs cannot recover against municipalities for alleged negligent inspection absent a special duty of care owed to them. *See Worth Distributors, Inc. v. Latham,* 59 N.Y.2d 231, 464 N.Y.S.2d 435, 451 N.E.2d 193, 194 (1983). *See also O'Connor v. City of New York,* 58 N.Y.2d 184, 460 N.Y.S.2d 485, 447 N.E.2d 33, 35 (1983) (dismissing complaint alleging a gas explosion following the erroneous issuance by a city of a form certifying compliance with gas piping regulations). In *Worth,* the New York Court of Appeals held that the failure of the City to enforce building safety provisions cannot expose the City to liability, even though its employees knew of dangerous structural conditions, unless a "special relationship has been shown that would establish a municipal duty to the instant plaintiffs in particular." 464 N.Y.S.2d 435, 451 N.E.2d at 194. The plaintiffs here have not claimed any such duty, nor pleaded any facts consistent with the City's assumption of a special relationship. Accordingly, these claims are dismissed.

### E. Claims of Negligence Per Se, Public Nuisance, and Private Nuisance

The City argues that the plaintiff's claims of negligence per se, public nuisance, and private nuisance must be dismissed because they are inadequately pleaded. First, it objects to the failure by plaintiffs to cite the specific statutes violated by the City in perpetrating negligence per se. Count II, charging the City with negligence per se, incorporates the preceding paragraphs. Only one paragraph mentions violation of laws by the City: "Upon information and belief, Defendant's negligence included, but was not limited to, Defendant's: (i) illegal and unsafe placement of diesel fuel tanks and other environmental contaminants in 7 World Trade Center in violation of applicable laws, codes, regulations, ordinances, and standards; (ii) failure to ensure that appropriate measures were taken to protect Plaintiffs' property in the Frozen Zone during the Response Period; and (iii) negligent supervision of employees, agents and contractors in the Frozen Zone during the Response Period." (Compl.¶ 150.)

As discussed above, I dismiss the claims regarding 7 World Trade Center for failure to satisfy the notice of claim requirements. Without the 7 WTC claims, plaintiffs have not stated claims for negligence per se because they do not allege any other violations of statutory law. *Cf. Elliott v. City of New York,* 95 N.Y.2d 730,

---

**4.** References are to the complaint filed in Case No. 03 Civ. 3104.

724 N.Y.S.2d 397, 747 N.E.2d 760, 762 (2001) (noting that violation of a state statute that imposes a specific duty constitutes negligence per se, while a violation of a municipal ordinance constitutes only evidence of negligence). Accordingly, Count II is dismissed.

 The City also moves for the dismissal of Counts III and IV, alleging private and public nuisance respectively. With regard to private nuisance, a plaintiff must allege that the defendant has invaded its right to use or enjoyment of land (1) intentionally and unreasonably; (2) negligently or recklessly; (3) or in a manner that would be actionable under the rules governing liability for abnormally dangerous conditions or activities. *Copart Indus., Inc. v. Consol. Edison Co.,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 362 N.E.2d 968, 971 (1977). The complaint identifies the City's prohibition of reentry into the plaintiff's properties as constituting negligent interference with their use of their properties. When a claim of nuisance is based on negligent conduct, the plaintiff will have to prove all the elements of negligence, including duty. "[W]henever a nuisance has its origin in negligence, negligence must be proven." *Id.* at 972 (citation omitted). I have already held that plaintiffs have failed to allege a legally sufficient claim based on the City's assumption of a special relationship with or towards plaintiffs. Accordingly, I dismiss the private nuisance claim with leave to replead.[5]

 I also dismiss plaintiffs' claims for public nuisance with leave to replead. Plaintiffs have not made factual allegations that, if proven, would qualify as a particularized injury suffered by the plaintiffs beyond that suffered by the public. Plaintiffs contend that their injuries are unique compared to those suffered by individuals and entities outside the Frozen Zone. However, plaintiffs must distinguish themselves from other individuals and entities within the Frozen Zone, not merely those outside the Frozen Zone. In *532 Madison Avenue Gourmet Foods Inc. v. Finlandia Center, Inc.,* the New York Court of Appeals rejected public nuisance claims where a partial collapse of nearby buildings, and the subsequent restrictions on access to the area, caused plaintiffs to lose business and incur economic loss. 96 N.Y.2d 280, 727 N.Y.S.2d 49, 750 N.E.2d 1097 (2001). The court held that plaintiffs could not sustain their public nuisance claims because their injuries were not unique. "[T]hough different in degree, the hot dog vendor and taxi driver suffered the same kind of injury as the plaintiff ... Each was impacted in the ability to conduct business, resulting in financial loss." *Id.* at 1104–5. Both *532 Madison* and the cases before me present situations where the City prevented entry into a defined geographical area, thereby causing all of the businesses therein to sustain damages. Plaintiffs cannot sustain a claim of public nuisance based on a particularized injury vis-à-vis those *outside* the Frozen Zone. Rather, they must "establish that their injuries were special and different in kind, not merely in degree," with respect to those in the Frozen Zone. *Id.* at 1105. If plaintiffs believe they can make such a showing, they may replead their public nuisance claims in their amended complaint, showing entitlement to a recovery on this theory.

### F. 134 Plaintiffs Other than Deutsche Bank

The City contends that the claims of all plaintiffs other than Deutsche Bank should

---

**5.** I also question whether the plaintiffs' claim can be characterized as a private nuisance, given that the conduct complained of affected a large group of people, and not just one person or a small number of persons. *See Copart,* 394 N.Y.S.2d 169, 362 N.E.2d at 971.

be dismissed because they failed to file a notice of claim. The Notice of Claim was filed by Bankers Trust, the predecessor to Deutsche Bank, and its "affiliates, subsidiaries, agents, successors, assigns, independent contractors, and vendors," but without each claimant's name and address as required by section 50–e(2) of the General Municipal Law. The complaint, although it names 134 plaintiffs other than Deutsche Bank, does not identify the other plaintiffs' relationship with Deutsche Bank or their right of recovery.

 I hold that the omission of the names and address of the 134 other plaintiffs may be excused, because it was done in good faith and did not prejudice the defendant, so long as the 134 plaintiffs demonstrate that they are entitled to sue through, or in relation to, Deutsche Bank. The notice of claim clearly informed the City that other entities closely aligned with Bankers Trust joined in the application and of the nature of the claims brought by these additional entities. No showing has been made that any of the 134 other plaintiffs have claims distinct from those of Deutsche Bank, and thus, the City was not prejudiced in its investigation by not knowing their identities. *Cf. Davidson v. New York City Hous. Auth.*, 56 Misc.2d 635, 289 N.Y.S.2d 677, 679 (N.Y.Sup.Ct. 1968) (permitting substitution of father for the mother in a suit brought on behalf of an injured child under section 50–e(6), even though father's damages could exceed those of the mother). Plaintiffs shall amend the complaint to allege the manner in which each of the 134 other plaintiffs are affiliates, subsidiaries, agents, successors, assigns, independent contractors, and vendors of Deutsche Bank, and how their claims against the City are through, or in common with, Deutsche Bank. Absent such a showing, their claims will be dismissed.

### III. Conclusion

For the reasons stated, case No. 02 Civ. 9762 is dismissed, and the Clerk of the Court shall mark it closed. The Clerk of the Court shall close case No. 03 Civ. 3104 on September 19, 2003, unless plaintiffs file an amended complaint in accordance with this Order before that time.

SO ORDERED.